July 30, 2026

**Supreme Court**

No. 2025-247-Appeal.
(KC 24-294)

Shilo D. Horsman, individually, and in   :
her capacity of as administratrix of the
Estate of Eric Horsman and as parent
and guardian of Jack Horsman, Matthew
Horsman, and Mason Horsman

v.                            :

Travelers Property Casualty Company   :
of America et al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Shilo D. Horsman, individually, and in  :
her capacity of as administratrix of the
Estate of Eric Horsman and as parent
and guardian of Jack Horsman, Matthew
Horsman, and Mason Horsman

                v.                :

Travelers Property Casualty Company  :
       of America et al.

Present: Suttell, C.J., Robinson, Lynch Prata, Long, and Flaherty (ret.), JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.** The plaintiff, Shilo D. Horsman,

individually, and in her capacity of as administratrix of the Estate of Eric Horsman

and as parent and guardian of Jack Horsman, Matthew Horsman, and Mason

Horsman, appeals from an entry of judgment in favor of the defendants, Travelers

Property Casualty Company of America (Travelers) and Phalanx Engineering, Inc.

(Phalanx) (collectively, defendants). Before this Court, the plaintiff argues that the

Superior Court erred in granting Travelers' motion for summary judgment and

denying her cross-motion. For the reasons set forth in this opinion, we affirm the

judgment of the Superior Court.

- 1 -

## Facts and Travel

On April 14, 2021, Eric Horsman (the decedent), while in the course of his employment, was involved in a motor vehicle accident that resulted in his tragic death seven days later. The plaintiff, decedent's widow, brought claims against her personal auto insurance policy, the tortfeasor's liability and excess policies, and the tortfeasor individually in the amount of $1,785,000. The plaintiff ultimately received such funds for herself and her minor children. The plaintiff then sought underinsured motorist (UIM) benefits under the commercial auto insurance policy (the Policy) held by the decedent's employer, Phalanx, issued by Travelers.

At the time of the decedent's death, he was employed at Phalanx as a corporate officer—an Assistant Vice President. The vehicle the decedent was driving at the time of the accident was owned by Phalanx and covered under the Policy. The Policy provided UIM coverage for twenty-six automobiles that were part of Phalanx's fleet. The Policy listed Phalanx as the Named Insured and identified the Named Insured as a corporation. Under the UIM portion, the Policy specified that, when the Named Insured is a corporation, the following are "insureds": "[a]nyone 'occupying' a covered 'auto'" and "[a]nyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another 'insured'."

Travelers conceded that the decedent was an "insured" under the Policy because he was operating a "covered auto" at the time of the accident—therefore

plaintiff was able to recover on behalf of the decedent. Accordingly, Travelers paid $1,000,000 to plaintiff, which is the per-accident UIM limit identified in the Policy's "Limit of Insurance" provision. The "Limit of Insurance" provision contained the following language:

> "Regardless of the number of covered 'autos', 'insureds', premiums paid, claims made or vehicles involved in the 'accident', the most we will pay for all damages resulting from any one 'accident' is the Limit of Uninsured Motorists Insurance shown in the Schedule or Declarations [($1,000,000)]. If there is more than one covered 'auto', our limit of insurance for any one 'accident', if 'bodily injury' is sustained by an individual Named Insured or any 'family member', is the sum of the limits applicable to each covered 'auto'."

The parties agree that the above provision means that only an "individual Named Insured" may stack UIM coverage to receive the sum of the limits of each covered auto.

Despite accepting the $1,000,000 payment, plaintiff asserted that the decedent should be considered an "individual Named Insured" and that, on behalf of the decedent, she was entitled to "stack" the UIM limits for each of the twenty-six vehicles covered under the Policy, totaling $26,000,000. Travelers denied plaintiff's demand to stack UIM coverage and sent e-mails to that effect on May 16, 2023, and May 30, 2023. The plaintiff then filed a complaint in Kent County Superior Court against defendants, arguing that she made a claim for additional UIM coverage, which Travelers denied. The plaintiff then sought a declaratory judgment against

both Travelers and Phalanx and asserted a claim for breach of contract against Travelers. The defendants answered, and then Travelers moved for summary judgment.[1] A hearing was held on the matter, wherein the hearing justice instructed the parties to submit a joint statement of undisputed facts, which they did. On June 11, 2025, the hearing justice entered an order granting Travelers' motion for summary judgment and denying plaintiff's cross-motion, after finding that "there [was] no circumstance in which [the decedent] could be considered an individual named insured." Final judgment was entered on the same day. The plaintiff timely appealed to this Court.

## Standard of Review

"This Court reviews *de novo* a trial justice's decision granting summary judgment." *Estate of Garan*, 249 A.3d 1254, 1257 (R.I. 2021) (quoting *Glassie v. Doucette*, 157 A.3d 1092, 1096 (R.I. 2017)). "Examining the case from the vantage point of the trial justice who passed on the motion for summary judgment, we view the evidence in the light most favorable to the nonmoving party, and if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law, we will affirm the judgment." *Middle Creek Farm,*

---

[1] Thereafter, plaintiff filed an amended complaint, adding a claim against Travelers for bad faith, and subsequently objected to Travelers' motion for summary judgment. The defendants filed an answer to the amended complaint, asserting fifteen affirmative defenses. Thereafter, plaintiff filed a cross-motion for partial summary judgment against Travelers, which was ultimately denied.

*LLC v. Portsmouth Water & Fire District*, 252 A.3d 745, 750-51 (R.I. 2021) (quoting *Boudreau v. Automatic Temperature Controls, Inc.*, 212 A.3d 594, 598 (R.I. 2019)). "Although summary judgment is recognized as an extreme remedy, to avoid summary judgment the burden is on the nonmoving party to produce competent evidence that proves the existence of a disputed issue of material fact." *Id.* at 751 (quoting *Boudreau*, 212 A.3d at 598). Accordingly, "a motion for summary judgment should be dealt with cautiously." *Estate of Garan*, 249 A.3d at 1257 (quoting *Glassie*, 157 A.3d at 1096).

**Discussion**

Before this Court, plaintiff argues that the decedent should be considered an individual Named Insured under the Policy and thus is entitled to stack UIM benefits for the sum of the limits of each covered auto, totaling $26,000,000. The plaintiff contends that she is entitled to intra-policy stacking because (1) the decedent was a corporate officer of Phalanx and was acting within the scope of his employment at the time of the accident, (2) Travelers waived its right to contest the decedent's status as an individual Named Insured because, according to plaintiff, this reason was not offered in Travelers' pre-suit e-mails, (3) the "Limit of Insurance" provision in the Policy which capped the maximum payment for UIM coverage rendered the stacking benefit illusory, and (4) intra-policy stacking is required pursuant to the Rhode Island Uninsured/Underinsured Motorist Statute, G.L. 1956 § 27-7-2.1(i).

**Waiver**

We begin with plaintiff's argument that Travelers waived its right to contest that the decedent was an individual Named Insured under the Policy, and to contest plaintiff's claim of intra-policy stacking of UIM benefits because Travelers did not articulate its reasons in its pre-suit emails denying intra-policy stacking. The plaintiff cites to *Skaling v. Aetna Insurance Company*, 799 A.2d 997 (R.I. 2002), to argue that, under Rhode Island law, Travelers cannot defend this suit or file a motion for summary judgment on facts or defenses not raised in its correspondence dated May 16, 2023, and May 30, 2023.[2] The plaintiff contends that, in its e-mails, Travelers relied on the "Limit of Insurance" provision in the Policy, which limited UIM coverage benefits to $1,000,000. The plaintiff argues that, in its e-mails, "Travelers never disputed [plaintiff's] assertion that [the decedent] was considered a Named Insured under the policy[,]" even though that was the core of plaintiff's claim for the stacking benefit. (Emphasis omitted.) Therefore, plaintiff asserts that Travelers waived its right to refute this claim now.

---

[2] The plaintiff argues that in *Skaling v. Aetna Insurance Company*, 799 A.2d 997 (R.I. 2002), this Court addressed the obligations of an insurer with respect to denying a claim on specific grounds and then relying on other defenses later when the suit is filed. The plaintiff emphasizes the following language in support of her argument: "Moreover, the insurer is limited to introducing evidence that is actually relied upon and communicated to the insured when it denied the claim, and may not seek to enhance its defense by pointing to extraneous facts or arguments that it did not communicate to the insured when it refused payment." *Skaling*, 799 A.2d at 1011.

- 6 -

Conversely, Travelers argues that it met its obligations under Rhode Island law when it denied plaintiff's claim seeking to stack UIM benefits. Travelers contends that it was only required to "promptly provide a reasonable and accurate explanation of the basis of [the denial]." (Quoting G.L. 1956 § 27-9.1-4(a)(12).) Travelers argues that it satisfied this requirement because its denial of plaintiff's right to stack coverage was based on the "unambiguous language" of the Policy— "wherein the Named Insured was expressly identified as a corporation, not an individual."

The hearing justice determined that plaintiff's waiver argument was inapplicable to the present case because Travelers' grounds for denying intra-policy stacking were sufficiently cited in its e-mails. We agree.

In *Skaling*, this Court established certain guidelines that insurers doing business in the State of Rhode Island must adhere to when denying an insured's claim. *See Skaling*, 799 A.2d at 1010-11. Those include "an implied obligation to promptly and fully respond to their insured, to investigate a claim and to subject that claim to appropriate review." *Id.* at 1010. Additionally, "[a]n insurer has a responsibility to assemble all the facts necessary for a fair and comprehensive investigation before it refuses to pay a claim and may not base a defense to bad faith on later acquired information." *Id.* at 1010 (emphasis omitted). Particularly, "[t]he decision of the insurance company to deny a claim under an insurance policy must

be judged by what was before it at the time the decision was made." *Id.* at 1011 (quoting *Insurance Company of North America v. Citizensbank of Thomasville*, 491 So. 2d 880, 883 (Ala. 1986)).

Indeed, in *Skaling*, this Court reinforced protections that prevent insurers from denying claims in bad faith.[3] *See Skaling*, 799 A.2d at 1006-07. We noted that, in situations where the claim is "fairly debatable[,]" insurers must not "intentionally or recklessly fail[] to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review." *Id.* at 1011 (quoting *Thomas v. Principal Financial Group*, 566 So. 2d 735, 744 (Ala. 1990)). However, the circumstances in this case do not demonstrate that Travelers engaged in such unreasonable conduct. *See id.* ("[T]he appropriate inquiry is whether there is sufficient evidence from which reasonable minds could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable.") (brackets omitted) (quoting *Zilisch v. State Farm Mutual Automobile Insurance Co.*, 995 P.2d 276, 280 (Ariz. 2000)). It is our opinion that Travelers did not deny plaintiff UIM benefits—it paid the $1,000,000 policy limit; rather, it denied her the

---

[3] "[B]ad faith is established when the proof demonstrates that the insurer denied coverage or refused payment without a reasonable basis in fact or law for the denial." *Shannahan v. Rhode Island Interlocal Risk Management Trust*, 269 A.3d 737, 740 (R.I. 2022) (quoting *Imperial Casualty and Indemnity Company v. Bellini*, 947 A.2d 886, 893 (R.I. 2008)).

ability to stack UIM coverage for the sum of the limits of each covered auto in accordance with the Policy's "Limit of Insurance" provision.

An examination of Travelers' correspondence confirms that Travelers sufficiently explained its reasons for rejecting intra-policy stacking which included reiterating language under the "Who is an insured" and "Limit of Insurance" provisions of the Policy. Travelers did not rely on any "later acquired information" in its motion for summary judgment that was not presented in its denial letters. *See Skaling*, 799 A.2d at 1010. The record reveals that Travelers clearly identified the decedent as an insured under the Policy and proceeded through the claim process reiterating this premise.

On May 16, 2023, Travelers clearly communicated to plaintiff that "[i]n this instance, [the decedent], as an employee of Phalanx, qualified as an insured, and therefore so did his surviving spouse and children to the extent they are entitled to recover damages for [the decedent's] death. However, despite the number of insureds, only one per accident limit is available." Travelers indicated that, under a policy where the named insured is the corporation, "insureds" were "[a]nyone 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'" and "[a]nyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another 'insured'." Travelers also clarified that the Policy did not provide for different limits based upon the classification of the insured.

Additionally, Travelers restated the Policy's "Limit of Insurance" provision, which provided that "the most [Travelers] will pay for all damages resulting from any one 'accident' is the Limit of Uninsured Motorists Insurance shown in the Schedule or Declarations." Travelers explicitly stated that "under the Commercial Auto Uninsured Motorist coverage, the Horsmans are entitled to a single limit of $1,000,000 for their combined claims."

Subsequently, on May 30, 2023, Travelers again stated that the limit shown in the schedule ($1,000,000) was the most they were willing to pay, notwithstanding the number of covered autos or insureds making a claim. Travelers further explained that intra-policy stacking was prohibited, regardless of the number of vehicles insured, where the insured paid a single premium. Travelers cited this Court's holding in *Cardoso v. Nationwide Mutual Insurance Company*, 659 A.2d 1097 (R.I. 1995), in support of its denial of plaintiff's request to stack coverage. *See Cardoso*, 659 A.2d at 1098 (holding that § 27-7-2.1(i) "was added in 1987 after this [C]ourt ruled in *Constant v. Amica Mutual Insurance Co.*, 497 A.2d 343 (R.I. 1985), that the insureds were not entitled to stack the uninsured-motorist benefits of their two separate policies when the policies had specific language prohibiting stacking"). Therefore, we conclude that Travelers did not waive its right to contest that the decedent was not an individual Named Insured under the Policy, and that intra-policy stacking was prohibited as applied to plaintiff's circumstances.

**Illusory Coverage**

Next, we turn to plaintiff's argument that Travelers' interpretation of the "Limits of Insurance" provision would render the stacking benefit illusory. The plaintiff acknowledges that the Policy explicitly provides for intra-policy stacking when the named insured is an *individual*. She argues, however, that the stacking benefit is illusory because no one would ever be entitled to it, given that the named insured was the *corporation*, Phalanx, and a corporation cannot suffer bodily injury.

In response, Travelers contends that "[i]llusory coverage is that which 'would *preclude coverage* in almost any circumstance.'" (Quoting *Empire Fire and Marine Insurance Companies v. Citizens Insurance Company of America/Hanover Insurance*, 43 A.3d 56, 61 (R.I. 2012).) Travelers argues that the fact that the named insured is Phalanx and thus stacking is prohibited, does not render UIM coverage illusory. Travelers argues that the Policy provided for $1,000,000 of UIM coverage per accident and that Travelers paid that amount to plaintiff because the decedent was an operator of one of the vehicles covered under the Policy.

"It is well established that the terms of an insurance policy are interpreted 'in accordance with the rules of construction that govern contracts.'" *Houle v. Liberty Insurance Corporation*, 271 A.3d 591, 594 (R.I. 2022) (brackets omitted) (quoting *Derderian v. Essex Insurance Co.*, 44 A.3d 122, 127 (R.I. 2012)). "[W]hen interpreting an insurance policy * * * we shall not depart from the literal language

of the policy absent a finding that the policy is ambiguous." *Mallane v. Holyoke Mutual Insurance Company in Salem*, 658 A.2d 18, 20 (R.I. 1995).

Additionally, "[t]his Court consistently has declared that central to the resolution of an insurance-coverage dispute is the interpretation of the policy as a whole." *Empire Fire and Marine Insurance Companies*, 43 A.3d at 60. Therefore, "[w]e will not read a policy's terms in isolation; instead, we read the policy 'in its entirety, giving words their plain, ordinary, and usual meaning.'" *Id.* (quoting *Irene Realty Corporation v. Travelers Property Casualty Company of America*, 973 A.2d 1118, 1122 (R.I. 2009)). Accordingly, in this case, we will not limit our reading of the Policy to its "Limit of Insurance" provision, and "we will not apply the policy as written if doing so would render the coverage provided illusory." *Id.* at 60-61.

Here, we are not persuaded by plaintiff's argument that Travelers' interpretation of the "Limits of Insurance" provision rendered UIM coverage under the Policy illusory. As the hearing justice noted, "the policy unambiguously states that stacking is only permitted when an individual named insured sustains bodily injury." Because it is undisputed that the named insured was Phalanx, the decedent thus was not permitted to stack UIM coverage. The mere exclusion of the decedent as an individual named insured did not render UIM coverage under the Policy illusory because coverage was not precluded—there was a $1,000,000 UIM coverage limit per accident.

The plaintiff also contends that, because a corporation cannot sustain bodily injury, someone under the policy must receive the stacking benefit; otherwise, coverage is illusory. The plaintiff is mistaken. This Court has established that, "[w]e will deem an exclusion to an insurance policy illusory only when it 'would preclude coverage in almost any circumstance.'" *Great American E & S Insurance Company v. End Zone Pub & Grill of Narragansett, Inc.*, 45 A.3d 571, 576 (R.I. 2012) (quoting *Pressman v. Aetna Casualty and Surety Co.*, 574 A.2d 757, 759 (R.I. 1990)). That is not the case here. Indeed, Travelers identified the decedent as an "insured" under the Policy and provided UIM coverage to plaintiff in the amount of $1,000,000. Therefore, because plaintiff was not precluded from UIM coverage but rather barred from the stacking benefit, UIM coverage was not illusory. *Contra Pressman*, 574 A.2d at 759 (holding that the definition of the word "premises" in the policy at issue was ambiguous and that the narrower definition adopted by the trial justice would render coverage illusory in almost any circumstance).

### *Martinelli* Exception

The plaintiff argues that, pursuant to *Martinelli v. Travelers Insurance Companies*, 687 A.2d 443 (R.I. 1996), the decedent should be considered an individual Named Insured under the Policy. *See Martinelli*, 687 A.2d at 446. The plaintiff argues that, in *Martinelli*, this Court established an exception (the *Martinelli* exception) where officers, shareholders, and employees of a corporation can be

considered Named Insureds, for purposes of UIM coverage, under a policy that identifies the corporation as the Named Insured, if the claimant is acting within the scope of his or her employment at the time of the injury.

The plaintiff argues that the *Martinelli* exception is applicable to the present case because it is undisputed that the Policy at issue listed Phalanx as the Named Insured, and the decedent was an Assistant Vice President of Phalanx, operating a covered auto in the scope of his employment at the time of the accident. Thus, according to plaintiff, because this Court has affirmed the existence of the *Martinelli* exception in subsequent cases and it is applicable here, the decedent is required to be considered an individual Named Insured irrespective of contrary policy language.

Travelers argues that *Martinelli* does not apply to the instant case, in that *Martinelli* does not address the issue at bar. Travelers argues that in *Martinelli* the question was whether the plaintiff was eligible for UIM coverage under his employer's commercial auto policy. In contrast, Travelers argues, the question here is whether the decedent is an individual Named Insured, entitled to stack UIM coverage. Travelers also relies on *Finch v. Centennial Insurance Company*, 650 A.2d 495 (R.I. 1994), to argue that "'employees who are injured while occupying vehicles owned by their employers and insured under commercial-fleet policies' are 'generally classified as a class-II insured and not allowed to stack coverage.'" (Quoting *Finch*, 650 A.2d at 498.) Travelers further contends that plaintiff's

position is a blatant contradiction of the Policy's terms, contrary to public policy, and would impose liability on Travelers greater than the parties' contemplated in the contract.

In *Martinelli*, this Court considered whether the plaintiff, a principal shareholder and general manager of his company, was entitled to UIM coverage under the commercial garage policy that listed the company as the Named Insured. *See Martinelli*, 687 A.2d at 444. There, we held that the plaintiff was not entitled to UIM coverage for two reasons. *Id.* at 446. First, we reasoned that the plaintiff was not entitled to class-I coverage because the plain text of the policy at issue clearly defined the named insured as the company. *Id.* at 445-46. Second, we reasoned that the policy only provided for class-II coverage but that the plaintiff did not qualify for such coverage because he was not occupying an insured vehicle at the time of his injury. *Id.* at 446.[4]

---

[4] *See Roberge v. Travelers Property Casualty Company of America*, 356 A.3d 293, 296 n.1 (R.I. 2026) ("Named Insureds are * * * 'commonly referred to as class-I insureds, and occupants of an insured vehicle are commonly referred to as class-II insureds.'") (quoting *Roberge v. Travelers Property Casualty Company of America*, 112 F.4th 45, 48 n.2 (1st Cir. 2024)); *see also Finch v. Centennial Insurance Company*, 650 A.2d 495, 498 (R.I. 1994) ("[Another state supreme court has] described class-I insureds as 'the insured who bought and paid for the protection and the members of his family residing in the same household.' * * * On the other hand, a class-II insured is one who is protected from damages received as a result of a collision while occupying an insured vehicle with an uninsured motorist. * * * These distinctions are widely recognized and frequently applied to cases involving employees who are injured while occupying vehicles owned by their employers and insured under commercial-fleet policies. That employee is generally classified as a

In the instant case, it is undisputed that the decedent was as an "insured" under the Policy because he was operating a covered auto at the time of the accident. Travelers then tendered the maximum amount of UIM coverage. Thus, our holding in *Martinelli* does not advance plaintiff's argument that she is entitled to stack the Policy's UIM limits in clear contradiction to the Policy's text. Accordingly, the hearing justice did not err in finding that *Martinelli* was inapplicable to the facts in this case.

## Section 27-7-2.1

Lastly, plaintiff argues that she, on behalf of the decedent, was entitled to stack the limits of UIM coverage for each covered auto, irrespective of contrary policy language, pursuant to the Rhode Island Uninsured/Underinsured (UM/UIM) Motorist Statute, § 27-7-2.1. The plaintiff argues that statutory stacking—stacking required pursuant to legislation—applies when a policy itself does not provide for stacking. The plaintiff argues that, under § 27-7-2.1, stacking is permitted if multiple UM/UIM premiums are paid under a policy. The plaintiff argues that here multiple UM/UIM premiums were charged for each covered auto and that the decedent, as an officer of Phalanx, should be considered having paid said premiums.

---

class-II insured and not allowed to stack coverage.") (deletion omitted) (quoting *Ohio Casualty Insurance Co. v. Stanfield*, 581 S.W.2d 555, 557 (Ky. 1979)).

The plaintiff also asserts that other jurisdictions have held that when an insurer attempts to charge a single premium but, in fact, assesses the risk and charges a premium for each vehicle, the case is considered a multi-premium and not a single-premium case for stacking purposes under UM/UIM statutes.

"[T]his Court reviews 'questions of statutory interpretation *de novo*.'" *In re J.T.*, 252 A.3d 1276, 1280 (R.I. 2021) (quoting *Crenshaw v. State*, 227 A.3d 67, 71 (R.I. 2020)). "When the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Id.* (brackets omitted) (quoting *Crenshaw*, 227 A.3d at 71). "However, when faced with an ambiguous statute, it is incumbent upon this Court to apply the rules of statutory construction and examine the statute in its entirety to determine the intent and purpose of the Legislature." *Id.* (brackets omitted) (quoting *Crenshaw*, 227 A.3d at 71). Likewise, "'in effectuating the Legislature's intent,' this Court reviews and considers 'the statutory meaning most consistent with the statute's policies or obvious purposes.'" *Id.* (quoting *Providence Teachers' Union Local 958, AFT, AFL-CIO v. Hemond*, 227 A.3d 486, 494 (R.I. 2020)).

Section 27-7-2.1(i) provides that

> "[w]henever an insured has paid two (2) or more separate premiums for uninsured motorists' coverage in a single policy of insurance or under several policies with the same insurance company, the insured shall be permitted to collect up to the aggregate amount of coverage for all of

- 17 -

the vehicles insured, regardless of any language in the policy to the contrary."

In *Finch*, this Court specifically addressed the question of whether intra-policy stacking of UIM coverage under commercial fleet policies is required under § 27-7-2.1(i) and determined that it was not required.[5] *See Finch*, 650 A.2d at 496 ("By its clear and unambiguous terms, Rhode Island's stacking statute does not apply to commercial fleet policies."). Therefore, we simply confirm what we stated in *Finch*. We noted in that case that "[§ 27-7-2.1(i)] is based on the premise that an insured must be the payer of the premium to be entitled to the stacking privilege." *Id.* at 496-97. Accordingly, we rejected an employee's claim to intra-policy stacking under his employer's commercial fleet policy, reasoning that "a class-II insured is one who has paid no premiums and has no reasonable expectations of coverage." *Id.* at 498.[6] Here, the plaintiff "is an insured only by virtue of his occupancy of one

---

[5] In *Finch*, the Court reasoned that "[t]he plaintiff in [that] case is an insured only by virtue of his occupancy of one vehicle out of his employer's fleet of eleven vehicles. He did not pay the premium for the uninsured-motorist coverage provided by [the insurer]. By virtue of these two important facts, plaintiff does not fall within the express terms of the stacking statute: 'an insured [who] has paid two (2) or more separate premiums' for uninsured-motorist coverage." *Finch*, 650 A.2d at 497 (quoting § 27-7-2.1(i)).

[6] In support of our opinion, we cited to the Pennsylvania Supreme Court's decision in *Utica Mutual Insurance Company v. Contrisciane*, 473 A.2d 1005 (Pa. 1984). *See Finch*, 650 A.2d at 497-98. As this Court noted, in *Utica*, the court declined to extend stacking privileges to a deceased employee under his employer's auto insurance policy, reasoning that "[a]s a class-II insured, [the decedent's] entitlement to coverage arose from nothing more than 'his temporary status as an occupant, rather than from his being a specifically intended beneficiary of the insurance

- 18 -

vehicle out of his employer's fleet of [twenty-six] vehicles." *See id.* at 497. Likewise, the payor of the UIM premiums is clearly identified in the Policy as Phalanx. Therefore, because § 27-7-2.1(i) does not require that the plaintiff be entitled to the stacking benefit, the hearing justice properly found that the statute was inapplicable.

## Conclusion

For the reasons stated herein, we affirm the Superior Court judgment. The papers in this case may be remanded thereto.

---

policy. * * * A claimant whose coverage is solely a result of membership in this class has not paid premiums, nor is he a specifically intended beneficiary of the policy. Thus, he has no recognizable contractual relationship with the insurer, and there is no basis upon which he can reasonably expect multiple coverage.'" *Id.* at 497-98 (quoting *Utica*, 473 A.2d at 1010-11).



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Shilo D. Horsman, individually, and in her capacity of as administratrix of the Estate of Eric Horsman and as parent and guardian of Jack Horsman, Matthew Horsman, and Mason Horsman v. Travelers Property Casualty Company of America et al. |
| **Case Number** | No. 2025-247-Appeal.<br>(KC 24-294) |
| **Date Opinion Filed** | July 30, 2026 |
| **Justices** | Suttell, C.J., Robinson, Lynch Prata, Long, and Flaherty (ret.), JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian Van Couyghen |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>James S. D'Ambra, Esq. |
| | For Defendants:<br><br>Jessica M. Savino, Esq. |